So the next case on the calendar is Hamby v. Hammond. Counselor? Yes, thank you. May it please the Court, I'm Hank Balson. I'm here on behalf of the plaintiff and appellate, Fleet Hamby. The central question in this case is this. How much pain is a prisoner required to endure before the Eighth Amendment requires prison officials to treat it? The defendants here take the position that they can require a prisoner patient to live with chronic and substantial pain, even if there is a common, readily available medical procedure to alleviate it, unless the condition is life-threatening or so severe, the pain is so severe that it prevents the patient from doing basic activities like getting to meals, dressing himself, bathing, that sort of thing. Well, many people live with pain rather than undergo surgery, particularly when the surgery is of uncertain efficacy, as this surgery is. It doesn't always work. It doesn't always relieve the problems. You have to go through anesthesia. It's all the recovery. So lots of people live with hernias for years and years and years, even though they undergo pain. What is the standard by which we judge this? If the doctors in good faith say, look, this is the kind of thing that's tolerable and that might get better on its own, and one of the hernias, not the umbilical, the other hernia. The inguinal. The inguinal hernia got better on its own, right? So it's not a crazy policy thing. It's not like having somebody with a broken leg and saying, well, you're going to let it be, and a broken leg will never mend unless you splint it or cast it or do something with it. It's hard to second guess. It's for us to second guess these judgments. Well, no, Your Honor. And yes, it's true that the inguinal hernia, the pain fluctuated. It got better. And then it got worse again. It never resolved. And to this day, despite the ongoing pain, defendants are refusing to treat it. Now, this is not a case where Mr. Hamby's treating providers said, you know, I think the pain is tolerable and you can live with this. This is a case where the treating providers recommended or requested a surgical consult because over the course of two years they had tried several conservative treatment measures, and those did not alleviate the pain. I'm sorry, which hernia are you now talking about? The umbilical hernia. The umbilical hernia. Although, actually. That's the one for which he eventually got surgery on the order of the district court, right? That's right. So there we're talking about some, or the dispute is over some period of delay between the time that you think or the plaintiff claims they should have ordered surgery and the point at which the district court actually did order surgery, right? That's right, Your Honor. And what is the onset date that you claim? Well, the hernia developed in April 2000. I don't need a life history. I just need a date. When do you think is the point, or what does that reflect, is the point at which they were acquired on pains of committing a constitutional violation to order surgery? Well, with respect to Dr. Smith, who was the facility medical director. Let's just start with a date. December of 2012 is when the facility, is when plaintiff's treating medical provider made a consultation request to Dr. Smith, noted the ongoing pain and the failure of conservative treatment, and asked for permission to refer Mr. Hamby to the surgeon for a consult. Dr. Smith denied it. Now, she didn't deny it because, or at least there's nothing in the record or in her testimony, she did not deny it because she did not believe that Mr. Hamby's pain was not as severe as she said. She denied it because she said she did not think it met the requirements of the offender health plan, which, and she also said it was because the hernia was not incarcerated, not life-threatening, and because he was still able to do his activities of daily living. In fact, that's not even the standard in the offender health plan. Under the offender health plan, a proposed medical intervention should be approved if it is necessary to relieve intractable pain. But insofar as there's a violation of the offender health plan, that doesn't help you anyway. You're claiming constitutional violation. That's right, Your Honor. And it could be that the offender health plan provides for treatment much sooner than there is a constitutional requirement, right? That's true, Your Honor. And it's also true that the defendant's compliance with the offender health plan, when they maintain that they were complying with the offender health plan, that does not necessarily mean that they complied with the constitutional standard, and that's what we're arguing here. You're the one who raised the offender health plan, so I didn't do it. Right. So I'm trying to tease out what it is you wanted to prove with that. I understand, Your Honor. So you're not telling me that it has no relevance at all. It doesn't help you. It doesn't hurt you. No, my point in raising the offender health plan was to point out that even their own policy recognizes that when a prisoner patient is in intractable pain. Well, other than making them look like schmucks, what relevance is it of that? The problem I'm having, counsel, is that the standard, as I understand it, is deliberate indifference. What can you offer to sustain that burden? Deliberate indifference. The trial court found, and the defendants concede, that both of Dr. Hamby's hernias are serious medical needs. Both Dr. Hammond and Dr. Smith were aware that he was suffering chronic, significant pain as a result of certainly the umbilical hernia. But he was treated for that in the prison. Yes, Your Honor. And for a condition like a hernia, there's a continuum of care. And so at the beginning, when a hernia is first diagnosed, a medical provider might provide conservative treatments, such as a hernia belt or recommendations to reduce activities or a stool softener, and then they see if that alleviates the pain. And then over time, the patient comes back and says, that's not working, that's not alleviating the pain, and then they try something else.  At that point, the only known treatment option to address Mr. Hamby's pain was referral to a surgeon. They didn't offer any alternative to alleviate the pain. The only alternative they offered is, we'll keep monitoring it, and if it becomes life-threatening or if you are unable to do your activities of daily living, then we'll refer you to a surgeon. But that's not the constitutional standard. Counsel, could I interject a question? So it seems that there's a range of different ways they can treat hernias, ranging from watchful waiting or some modest measure to where they go to surgery. Some cases, under their policy, they authorize the surgery right away, like if it was incarcerated or whatever, and could lead to strangulation. And other cases, they don't automatically authorize it. It goes to their review panel, which may or may not authorize it. So the problem, I guess, that I sense my colleagues are having in part here is on the subjective element of deliberate indifference. How much pain or how long does someone have to have pain before non-treatment of it creates deliberate indifference? Someone could have a sharp pain in a lot of settings where it's going to go away at some point.  So how long could the medical people sit on this without authorizing a surgical consult before it becomes deliberate indifference? Well, what this court held in McGuckin v. Smith is the existence of an injury that a reasonable doctor or patient would find important, worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. So when a prisoner presents with chronic and substantial pain, which Mr. Hamby did, we're not saying they immediately had to provide surgery, but when that pain fails to respond to all of the conservative treatment measures offered by the prison and there's one treatment option left that even Dr. Hammond admitted more likely than not would have relieved Mr. Hamby's pain, they can't withhold that and allow the prisoner to continue suffering and wait until it becomes life-threatening or so debilitating. Assuming we end up agreeing with you, this coroner was treated surgically under court order. So is measure of damages, damages for pain in the period of unjustified delay? Yes. What are we really talking about? Well, the measure of damages would be the pain he endured unnecessarily between the time that the defendants were aware that he was suffering chronic and substantial pain and that conservative treatment had failed and then denied the one treatment option left to alleviate the pain. Is chronic a term of art? Is there something chronic when you're dealing with pain? If it lasts for a year or if it lasts for a month, what makes it chronic? That I'm not aware of a clinical definition of chronic, but I believe a reasonable definition is chronic, that it continues and does not resolve in response to conservative treatment measures. And I believe the court can even look to where the offender health plan, they give a definition of intractable pain that includes pain that is moderate to severe in intensity and frequent or constant in occurrence. And in this case, the undisputed facts show that Mr. Hamby had pain that was moderate to severe in intensity and frequent or constant in occurrence. Was he given pain medication? I believe he may have been given ibuprofen or Advil, but there was no recommendation for stronger pain medication. Okay, thank you. Thank you. Good morning, Your Honors. May it please the court. I'm Assistant Attorney General Tim Fulner, and I represent the defendant correctional officials in this case. The district court's decision should be affirmed for two primary reasons. First, it correctly concluded that defendants were entitled to qualified immunity because it is not clearly established that the failure to surgically repair a reducible hernia violates the Eighth Amendment. And second, plaintiff failed to provide sufficient evidence of deliberate indifference. Specifically, plaintiff failed to show that the chosen course of treatment was medically unacceptable under the circumstances. In terms of qualified immunity, defendants are entitled to qualified immunity for damages insofar as their conduct does not violate clearly established law of which a reasonable person would have known. And that's important in this case because plaintiff's claims related to the umbilical hernia are only claims for damages at this point. Plaintiff Mr. Hamby has conceded that the claims related to his injunctive relief for that condition are moot at this point. So the only surviving claims are monetary damages. In terms of qualified immunity, although a case does not need to be precisely on point, existing precedent must place the question beyond debate. Here we aren't arguing that there is a lack of clarity in the case law. Instead, the correctional officials have pointed to over 15 cases in which courts have found that the failure to surgically repair a reducible hernia does not violate the Eighth Amendment. Almost all of the circuits, courts of appeals, have reached that conclusion in unpublished decisions, and one published decision from the Seventh Circuit has also reached that conclusion. Based on those 15 cases, there is no way that the defendants would have had fair notice that the failure to surgically repair a reducible hernia violated the Eighth Amendment and the district court correctly concluded. Judge Goldberg Counsel, let me ask you a question on that. I think there's a very subtle, difficult issue on deliberate indifference here. But on your qualified immunity point, I feel like the law can't be that there has to be precedent on every particular medical procedure. You know, medical treatments are varied because of so many different ailments people can have, and the methods of treatment are constantly changing. There are always new ways to deal with things. So it seems to me that we shouldn't say that to have clearly established law on a point there has to be a precedent that talks about surgery to repair a hernia. There's tons and tons of cases that deal with the more general principles about when medical treatment is required. And so that really troubles me about your argument. Yes, Your Honor. You may be correct that the exact condition is not required to have a case exactly on point, or there may be some conditions that are so obvious that qualified immunity is not appropriate. However, in this case, we have the exact opposite. We have cases where courts have routinely found no Eighth Amendment issue for the failure to repair a reducible hernia in factual circumstances that are indistinguishable from Mr. Hamby's factual circumstances. Are there any cases to the contrary? Mr. Hamby, Your Honor, has... Yes, Your Honor, Mr. Hamby has cited four cases, district court cases, from the Ninth Circuit, which reached opposite conclusions. Three of them were from Oregon, one in which had adopted a policy of not repairing reducible hernias under any circumstances. That's not a situation we have here. Mr. Hamby has not pointed to any Circuit Courts of Appeals cases that have found the opposite proposition, while defendants have purported to numerous cases. So that nets out to 15 to 1. Is that essentially where we are? 15 to 4, Your Honor. He pointed to 4. But you were distinguishing the Oregon cases. Correct, Your Honor. So 15 to 1 in that count. So how long does a person have to be in severe pain before the doctors are required to consult on surgery? In terms of a hernia, Your Honor, is that the question? Your Honor, it's an exercise of medical discretion. As all the treating providers have indicated, there is no precise cutoff date that we can say they're automatically entitled to surgery. As all the treating providers indicated in their depositions and declarations below, it's based on a range of factors which include the ability of the person to function, the severity of the pain, things like that. Mr. Hamby functioned at a very, very high level. He worked five days a week as an electrician's assistant for seven and a half hours a day. He went to school at night in a welding school, and he did exercises on the weekend, which included 105 push-ups with laps in between each set. I was very impressed with seven or eight sets of 15 push-ups. That shows he wasn't totally disabled. However, still I'm bothered with how much he's got to show to get a consultation. Am I right that his own treating physician recommended or said he wanted a surgical consult, and that was denied by the review committee? No, not entirely, Your Honor. His treating primary care provider was Mr. Figueroa, and Mr. Figueroa testified in his deposition that he would have voted no for surgical repair in the care review committee. Another physician assistant, Scott Light, did submit a request for a surgical referral in December 2012. However, the Eighth Amendment does not establish deliberate indifference when there is disagreement among medical providers or... Figueroa was a doctor assistant, right? A physician's assistant, yes, Your Honor. And the other guy, was it a physician or assistant? Mr. Light was a physician assistant, Your Honor. Deliberate indifference requires more than a mere disagreement among treating providers, and it recognizes that when there are situations where doctors are using their professional judgment, deliberate indifference does not exist. As Plaintiff has indicated, there is a continuum of care in treating hernia conditions. And all the medical providers in this case indicated that the Department considers a range of factors consistent with the standard of care in the community in determining whether or not to surgically repair a hernia condition. And that's exactly what the medical providers in this case did when evaluating Mr. Hamby's hernia condition. Additionally, when the court looks at the individuals who were named defendants in this case and takes a look at their actions, it does not establish deliberate indifference. Mr. Hamby has identified three individuals who did not have much involvement in Mr. Hamby's care at all. He identified Dr. Smith, who is a facility medical director, Dr. Hammond, who is the facility medical director for the Department of Corrections, and Secretary Warner, who is the secretary of the Department of Corrections. Their involvement in Mr. Hamby's care is quite limited and does not establish deliberate indifference. Instead, it established that they exercised their professional judgment and agreed that a course of conservative measures was appropriate for Mr. Hamby's condition based on the fact that he was functioning at a high level and able to do quite a lot. Do I understand correctly that under the plan, if he had been able to and willing to pay for the surgery, they would have done that? That is correct, Your Honor, yes. So this was a situation where they were not willing to pay for it based on their judgment, but they would have done it if the patient had paid for it? Yes, Your Honor, they were not going to deny care, which Mr. Hamby would go to the expense of paying for if that was something that he decided to do. The hernia surgery was elective, and Mr. Hamby had the option to purchase that elective surgery. And he didn't have the money, or do we know why he didn't? Yes, Your Honor, I believe Mr. Hamby has indicated he did not have the funds to purchase that surgery. Okay. Unless the court has any other questions, I would simply ask that the decision of the district court be affirmed. Thank you. Okay, thank you. You're out of time. Excuse me? You were way over your time. Case decided, you will stand submitted. We are in recess.
judges: Kozinski, O'scannlain, Gould